## Bromley v. Langhorne, et al.

(Decided October 11, 1911.)

### Appeal from Boyd Circuit Court.

Instructions.—In an action for damages for injuries to a horse, the instructions examined and held to have properly presented the law of the case.

DINKLE & PRICHARD for appellants.

WORTHINGTON, COCHRAN & BROWNING, L. T. EVERETT for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiffs, Mrs. Wayne Bromley and husband, brought this action against C. D. Langhorne and Allen Langhorne, the Chesapeake & Ohio Railway Company

and the Ohio & Big Sandy Railroad Company, to recover damages for injury to her horse. A jury returned a verdict in favor of the defendants, and from the judgment predicated thereon the plaintiffs appeal.

The facts, briefly stated, are as follows: Plaintiffs' horse was worth on the market about $500. On the occasion when he was injured the horse was being driven by a colored man in plaintiffs' employ. The defendants, Langhorne & Langhorne, contractors, were engaged in operating a steam shovel along the right of way of the railroad company. Adjoining the steam shovel was a train, consisting of an engine and a few cars, and the dirt was being removed by the steam shovel and loaded into these cars. Every now and then the engineer in charge of the engine would move the cars a few feet, upon being signaled by those in charge of the steam shovel. The operation of the steam shovel was attended by a considerable noise. Upon the occasion in question the driver of the horse drove along a public road which parallels the railroad track for a considerable distance. At the place of the accident the road from the fence on the opposite to the ends of the ties is about eighteen feet wide. Shortly before the accident Martin, the driver, had driven the horse by the steam shovel. At that time he became frightened and ran rapidly up the road. When Martin returned, he drove the horse and buggy up to a point opposite the steam shovel. The horse then began to prance and jump. Martin asked a passerby to hold the horse, and claims he then went to the cars and called under the cars to those in charge of the steam shovel to cease operations until he got by. Another witness for the plaintiff says that Martin got upon the bumpers for this purpose. The latter witness did not hear the conversation which took place, but understood that Martin was asking those in charge of the engine to wait until he got by. Martin claims he heard some one about the steam shovel say "all right." He then returned to his horse. At that time the steam shovel started up, the train began to move, the horse jumped and pranced and struck his head against one of the cars, injuring his skull. The engineer in charge of the engine had his back to the horse, and did not see it; the fireman, however, did see the horse. Whether those in charge of the steam shovel saw the horse or heard Martin request them to cease the opera-

tions, does not satisfactorily appear. Plaintiff's husband testified that the horse was worth about $500 on the market; that he was injured, at least to the extent of half his value. The veterinary who attended the horse, stated that, after the accident, the horse was practically worthless. Notwithstanding this fact plaintiff sold the horse for another horse worth $100 and the further sum of $75. The purchaser of the horse claims that it was in good condition. He kept the horse for fourteen months, using him in his livery stable, and then sold him on the open market for $145.

The court instructed the jury as follows:

"1. The court instructs the jury that if they believe from the evidence that the plaintiff's horse became frightened while attempting to pass along the county road at the defendants' steam shovel and that the defendants, their agents and servants in charge of said steam shovel and train knew that said horse was frightened at said steam shovel and likely to run upon said track, or by the exercise of ordinary care on their part could have known of same in time to have prevented injuring him, it was the duty of the defendants to use reasonable care to prevent injuring said horse by stopping said shovel and stopping said train, and if you believe from the evidence that defendants had said knowledge or said means of knowledge and failed to stop said shovel and started said train, and that by reason of which plaintiff's said horse was injured, you will find for plaintiff and fix her damages as in instruction No. 3.

"2. If the jury believe from the evidence that the servant of the plaintiff in charge of her horse and buggy was on the occasion mentioned himself guilty of negligence and that but for such negligence on his part the injury, if any, to the horse would not have happened, the law is for the defendants and the jury will find for them.

"3. If the jury find for plaintiff under instruction No. 1, they will allow her as damages the difference, if any, in the fair market value of the horse immediately before the alleged injury and its fair market value after the alleged injury, not exceeding two hundred and fifty dollars, the amount sued for in the petition.

"4. Ordinary care, as used in these instructions, is that degree of care which ordinarily prudent persons are accustomed to exercise under like or similar circumstances.

"Negligence is the absence of ordinary care.

"5. Nine or more of the jury concurring may return a verdict, but if it be made by less than the entire jury it must be signed by all of the jurors agreeing to it."

It is insisted that no instruction on contributory negligence should have been given, and even if such an instruction was proper, it should have been qualified by adding thereto the words "unless the jury should find from the evidence that the defendants, through their agents and servants in charge of said train and steam shovel, saw said horse's peril in time to prevent said injury to him by the use of ordinary care."

As the horse had become frightened when he first passed the steam shovel, the driver knew of the probability of his being frightened upon his return. He did not stop the horse at a reasonable distance from the steam shovel and then make an effort to have those in charge of the shovel and train cease operations until he got by. On the contrary, he drove up to a point opposite the steam shovel. The horse then began to prance. He made no further effort to go by, but turned the horse over to a stranger to hold. Why he did not drive on, or lead the horse by, does not satisfactorily appear. Under these facts we think the question, whether or not he was guilty of contributory negligence, was one for the jury.

Nor do we see any merit in the contention that the instruction upon contributory negligence should have been qualified in the manner set out above. The court, in instruction No. 1, had already told the jury that if the defendants, or their agents and servants in charge of said steam shovel and train, knew that the horse was frightened at the shovel and was likely to run upon the track, or by the exercise of ordinary care upon their part could have known of same in time to prevent injuring him, it was the duty of defendants to use reasonable care to prevent injuring the horse by stopping the shovel and the train, and if they failed to do so and by reason thereof the horse was injured, they should find for the plaintiff. The language of this instruction was broad enough to include any peril to the horse of which the defendants knew, or by the exercise of ordinary care could have known, in time to prevent the injury, it matters not when that peril arose. That being true, instruction No. 1 properly presented the proposition that counsel for plaintiff contend should have been embraced in

the qualification referred to. Reading the instructions together, we conclude that they properly and aptly presented the law of the case.

Judgment affirmed.